<u>PUBLISH</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.                              No. 02-2273

FERNANDO CEBALLOS-MARTINEZ,

    Defendant - Appellant.

**ORDER**

Filed June 16, 2004

Before **TACHA**, **McKAY**, and **McCONNELL**, Circuit Judges.

Upon further consideration of appellant's petition for rehearing, the court called for an en banc poll.

The petition for rehearing was transmitted to the en banc court, which is composed of all of the judges of the court who are in regular active service, and is denied. Judges Henry, Briscoe, Lucero, and Hartz would grant rehearing.

                        Entered for the Court
                        PATRICK FISHER, Clerk of Court

           by:
                Deputy Clerk

02-2273 - United States v. Ceballos-Martinez

**HARTZ,** Circuit Judge, dissenting, with whom **BRISCOE** and **LUCERO**, Circuit Judges, join.

The issue addressed in the panel opinion is whether Defendant satisfied the prison mailbox rule by depositing his notice of appeal with the prison mail system by September 25, 2002. It is uncontested that he did; the government does not dispute that the notice of appeal was mailed by the prison in an envelope postmarked September 24, 2002. Nevertheless, rejecting a "myopic approach to statutory construction," the panel reads "may" in Federal Rule of Appellate Procedure 4(c)(1) to say "must," and dismisses Defendant's appeal because the rule required him to establish compliance with the prison mailbox rule by means of either a declaration in compliance with 28 U.S.C. § 1746 or a notarized statement. I respectfully disagree.

Rule 4(c)(1) states**:**

> If an inmate confined in an institution files a notice of appeal in either a civil or a criminal case, the notice is timely if it is deposited in the institution's internal mail system on or before the last day for filing. If an institution has a system designed for legal mail, the inmate must use that system to receive the benefit of this rule. Timely filing <u>may</u> be shown by a declaration in compliance with 28 U.S.C. § 1746 or by a notarized statement, either of which must set forth the date of deposit and state that first-class postage has been prepaid.

(emphasis added). I can think of no reason why the drafters of Rule 4(c)(1) would have used "may" rather than "must" to convey the meaning given that provision by the panel opinion. The natural, common-sense meaning of the rule is that proof by declaration or affidavit is permissive. That construction of the rule also leads to a common-sense result

on the issue decided by the panel—why treat a timely notice of appeal as untimely?

For those interested in "legislative history," the history in this case supports my view. Supreme Court Rule 29.2 states:

> If submitted by an inmate confined in an institution, a document is timely filed if it is deposited in the institution's internal mail system on or before the last day for filing and is accompanied by a notarized statement or declaration in compliance with 28 U.S.C. § 1746 setting out the date of deposit and stating that first-class postage has been prepaid.

After that rule was promulgated, the Judicial Conference's Advisory Committee on Appellate Rules recommended adoption of the same rule, with one alteration. According to the Committee's minutes of its April 17, 1991, meeting, it decided that a statement of timely filing should not be required. The Committee recommended language essentially identical to the current third sentence of Federal Rule of Appellate Procedure 4(c)(1):

> Timely filing may be shown by a notarized statement or by a declaration in compliance with 28 U.S.C. § 1746 setting forth the date of deposit and stating that first-class postage has been prepaid.

Rule 4(c) was amended in 1998 to add a sentence requiring that inmates use a prison system designed for legal mail if such a system is available. But the changes to the sentence regarding declarations and notarized statements were solely for stylistic reasons. The minutes of the Appellate Rules Advisory Committee and of the Judicial Conference's Standing Committee on Rules do not indicate any intent to make it mandatory to submit a statement or declaration. On the contrary, as reported in the minutes of the January 1996 Standing Committee meeting, the Advisory Committee informed the Standing Committee

that the only substantive change to the rule was to require use of an available legal-mail system.

At the least, I would have hoped that the panel would have given Defendant an opportunity to submit a declaration or affidavit after the opinion was filed, see Sulik v. Taney County, 316 F.3d 813, 814 (8th Cir. 2003) (postmark showed that prisoner had met deadline), or would have remanded to the district court for fact finding, see United States v. Propst, 68 Fed. Appx. 509 (4th Cir. 2003).

I would therefore grant rehearing en banc on the issue addressed by the panel, reverse the panel opinion, and leave to the panel the task of resolving the issues raised by the parties' briefs.

# UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

    No. 02-2273

FERNANDO CEBALLOS-MARTINEZ,

    Defendant - Appellant.

### ORDER

Filed May 24, 2004

Before **TACHA**, Chief Circuit Judge, **McKAY** and **McCONNELL,** Circuit Judges.

    Appellant's petition for rehearing is denied.

    The opinion filed February 12, 2004, is hereby replaced with the attached revised opinion.

Entered for the Court
PATRICK FISHER, Clerk of Court


by:
    Deputy Clerk

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 12 2004**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

FERNANDO CEBALLOS-MARTINEZ,

Defendant - Appellant.

No. 02-2273

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
**(D. Ct. No. CR-01-1155 JC)**

**Submitted on the briefs:**[*]

Alonzo J. Padilla, Assistant Federal Public Defender, Albuquerque, New Mexico, for Plaintiff-Appellant.

David C. Iglesias, United States Attorney, and David N. Williams, Assistant United States Attorney, Office of the United States Attorney, Albuquerque, New Mexico, for Defendant-Appellee.

Before **TACHA**, Chief Circuit Judge, **McKAY**, and **McCONNELL**, Circuit Judges.

---

[*]After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

**TACHA**, Chief Circuit Judge.

Defendant Fernando Ceballos-Martinez seeks to appeal his sentence imposed by the district court. Because Mr. Ceballos-Martinez's notice of appeal fails to comport with Fed. R. App. P. 4(c)(1), we lack subject-matter jurisdiction to consider this appeal. Therefore, we DISMISS.

## I. Background

A federal grand jury indicted Mr. Ceballos-Martinez on one count of possessing with intent to distribute more than 500 grams of cocaine, to which he pleaded guilty. Mr. Ceballos-Martinez seeks to appeal the determination of the length of his sentence. The district court, however, received Mr. Ceballos-Martinez's notice of appeal, which he personally filed while in prison,[1] five days after the deadline for filing such a notice. Moreover, his notice of appeal failed to include a declaration in compliance with 28 U.S.C. § 1746 or a notarized statement setting forth the date he deposited his notice of appeal with prison officials and that he pre-paid first-class postage for his filings, and we have not subsequently received such a filing.

Mr. Ceballos-Martinez argues that the district court's receipt of his notice of

---

[1] Mr. Ceballos Martinez was confined in the Torrance County Jail in Estancia, New Mexico. The record reflects that this facility does not have a "legal mail system."

appeal five days after the filing deadline is timely under the "prisoner mailbox rule."[2] *See* Fed. R. App. P. 4(c)(1). In response, the government argues that we lack subject-matter jurisdiction to entertain this appeal under Fed. R. App. P. 4(c)(1).[3]

## II. Discussion

"Without jurisdiction [a] court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (internal quotations omitted). "The filing of a timely notice of appeal is an absolute prerequisite to our jurisdiction." *Parker v. Bd. of Pub. Utils.*, 77 F.3d 1289, 1290 (10th Cir. 1996). Moreover, the party claiming appellate jurisdiction bears the burden of establishing our subject-matter jurisdiction. *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002). Here, we have subject-matter jurisdiction only if Mr. Ceballos-Martinez's notice of appeal comports with the provisions of Fed. R. App. P. 4(c)(1) or if he has subsequently filed a declaration or notarized statement that does.

The Rule states:

---

[2]Mr. Ceballos-Martinez and the government briefed the underlying merits of this appeal as well. Because we dismiss for lack of subject-matter jurisdiction, we do not reach these issues.

[3] The government argues that Mr. Ceballos-Martinez may not employ the prisoner mailbox rule at all because he was not technically pro se at the time of filing. Rather than reaching that issue, we decide today that, even assuming that he was pro se, Mr. Ceballos-Martinez failed to prove timely compliance as required by Fed. R. App. P. 4(c)(1). We also do not decide whether a represented prisoner may take advantage of Rule 4(c)(1).

[1] If an inmate confined in an institution files a notice of appeal in either a civil or a criminal case, the notice is timely if it is deposited in the institution's internal mail system on or before the last day for filing. [2] If an institution has a system designed for legal mail, the inmate must use that system to receive the benefit of this rule. [3] Timely filing may be shown by a declaration in compliance with 28 U.S.C. § 1746 or by a notarized statement, either of which must set forth the date of deposit and state that first-class postage has been prepaid. Fed. R. App. P. 4(c)(1).

Mr. Ceballos-Martinez's notice of appeal lacks a declaration in compliance with 28 U.S.C. § 1746 or notarized statement setting forth the notice's date of deposit with prison officials and lacks a statement that first-class postage was pre-paid, and he has not subsequently filed such a form in compliance with Rule 4(c)(1). The jurisdictional question we must address, then, is whether Mr. Ceballos-Martinez's notice of appeal, even though it fails to include the above referenced provisions, complies with the congressional mandate that "[t]imely filing *may* be shown by a declaration . . . or notarized statement[.]" *Id.* (emphasis added). In other words, we must decide whether Mr. Ceballos-Martinez may prove the date of deposit and pre-payment of postage by means other than a declaration in compliance with 28 U.S.C. § 1746 or a notarized statement.

We note that the Rules of Appellate Procedure are replete with examples of Congress using "must" to denote necessity and "may" to denote permissiveness. *Compare* Fed. R. App. P. 4(b)(1)(A) ("[A] defendant's notice of appeal *must* be filed . . . .") (emphasis added) *with* Fed. R. App. P. 4(a)(5)(A) ("The district court *may* extend the time to file . . . .") (emphasis added). Given this distinction, reading the third sentence of

the Fed. R. App. P. 4(c)(1) in isolation could lead one to believe that the Rule only lists two of the many ways in which a prisoner *may* prove timely compliance. We reject this myopic approach to statutory construction.

The principle that we must interpret statutes and rules of procedure based on their plain language, *see Watt v. Alaska*, 451 U.S. 259, 265 (1981), does not require that courts wear blinders to the context in which a word or sentence is used. Instead, rightly understood, this rule requires us to interpret Congress's choice of words in the context that it chose to use them. *See United States v. Bishop*, 412 U.S. 346, 356 (1973) ("We continue to recognize that context is important in the quest for [a] word's meaning . . . ."). Therefore, in holding that "may" does not reflect a congressional intent to render the declaration and notarization provisions of the Rule permissive, we look to the context of the Rule as a whole, our case law, and any absurd results that would flow from a contrary interpretation.

First, when placed into the context of Fed. R. App. P. 4(c)(1) as a whole, we find that "may," as used in the last sentence of the Rule, references a choice between the means of proving compliance—not an option to ignore the provisions of the third sentence altogether. The Rule has the following structure. The first sentence establishes the mailbox rule itself (i.e., a notice of appeal is timely filed if given to prison officials prior to the filing deadline). The second sentence is written as a conditional statement, stating that if the prison has a legal mail system, then the prisoner must use it as the

means of proving compliance with the mailbox rule. The third sentence applies to those instances where the antecedent of the second sentence is not satisfied (i.e., where there is not a legal mail system). Hence, we read the third sentence in the context of the preceding sentence. As such, the third sentence—instead of absurdly requiring a prisoner to use a nonexistent legal mail system pursuant to the provisions of the second sentence—provides that a prisoner "may" file an appropriate declaration or notarized statement with his notice of appeal in lieu of documenting the time of deposit by way of the legal mail system. Thus, when read in context, "may" does not reflect a congressional intent to render the provisions of the third sentence permissive; rather, "may" references Congress's intent to allow prisoners a filing option for those cases where a legal mail system is not available.

Second, at least one court of appeals interprets Fed. R. App. P. 4(c)(1) as we do, and our review of the law finds no contrary interpretations. The Eighth Circuit holds that the declaration and notarization provisions of the Rule are mandatory in those instances where the prison lacks a legal mail system. *See Grady v. United States*, 269 F.3d 913, 918 (8th Cir. 2001) ("We have discerned that the prison mailbox rule, as codified in Rule 4(c) . . . , consist[s] of two requirements. A prisoner must have actually deposited his legal papers with the warden by the last day for filing with the clerk. And the prisoner

must at some point attest to that fact in an affidavit or notarized statement.").[4]

Third, interpreting the requirements of the Rule's third sentence as mere suggestions would render large portions of Fed. R. App. P. 4(c)(1) meaningless and run contrary to established caselaw. For example, under such a permissive interpretation of the Rule, a defendant could file an affidavit attesting under penalty of perjury that he filed his notice of appeal by the required date, and yet not attest that he paid first-class postage on his filings. If "may" reduces the requirements of the Rule's last sentence to mere suggestion, a reviewing court could not refuse to accept the attestation. Thus, in this hypothetical, even though the attestation lacks the first-class-postage-attestation requirement of Rule 4(c)(1), the prisoner would simply be exercising his right to prove compliance in an alternate form. This permissive interpretation of the Rule would render its specific requirements mere surplusage, contrary to a cardinal canon of statutory construction. *See Duncan v. Walker*, 533 U.S. 167, 174 (2001) ("It is our duty to give effect, if possible, to every clause and word of a statute . . . . [Because] this rule [is] a cardinal principle of statutory construction . . . a statute ought . . . to be so construed that . . . no clause, sentence, or word shall be superfluous, void, or insignificant[.]") (internal

---

[4] While we note that the text of the rule does not require the prisoner to file this attestation at any particular time, at the very least, the prisoner must file it before we resolve his case. If the prisoner fails to do so, we lack jurisdiction to consider his appeal. Thus, to avoid dismissal of their appeals, *we strongly encourage* all prisoners to include with their notices of appeal a declaration or notarized statement in compliance with Rule 4(c)(1).

quotations omitted) (citations omitted).  Furthermore, such an interpretation would produce results contrary to established case law.  *See United States v. Smith*, 182 F.3d 733, 735 n.1 (10th Cir. 1999) (refusing to grant a pro se prisoner benefit of the prison mailbox rule because his filing "did not, as required, 'state that first-class postage has been prepaid.'") (citing Fed. R. App. P. 4(c)(1)).  In light of these considerations, we read Fed. R. App. P. 4(c)(1) to provide the mandatory method by which a prisoner, who does not have access to a legal mail system, proves compliance with the mailbox rule.  If a prison lacks a legal mail system, a prisoner *must* submit a declaration or notarized statement setting forth the notice's date of deposit with prison officials and attest that first-class postage was pre-paid.

As we noted above, Mr. Ceballos-Martinez's notice of appeal has neither a declaration of compliance nor a notarized statement, and it fails to affirm that he pre-paid first-class postage for any of his filings.  Further, he has not subsequently filed a declaration or notarized statement in compliance with Rule 4(c)(1).  Because we find that Mr. Ceballos-Martinez failed to employ the methods provided by Congress to establish compliance with the mailbox rule, we dismiss for lack of subject-matter jurisdiction.

At first blush, our holding may appear to be in tension with established law dictating that we liberally construe a pro se litigant's pleadings, *see White v. Colorado*, 82 F.3d 364, 366 (10th Cir. 1996), and that we interpret procedural rules in favor of "deciding cases on the merits as opposed to dismissing them because of minor technical

defects[,]" *Denver & Rio Grande W. R.R. Co. v. Union Pac. R.R. Co.*, 119 F.3d 847, 848 (10th Cir. 1997). Although these principles run deep, we have never interpreted them to give litigants—even pro se litigants—*carte blanche* to disregard congressionally established procedural rules. *See, e.g., Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994) (citing cases for principle that pro se parties must "follow the same rules of procedure that govern other litigants") (internal citations omitted). Indeed, we have required pro se prisoners to adhere to the dictates of Fed. R. App. P. 4(c)(1). *See, e.g., Smith*, 182 F.3d at 735 n.1 (10th Cir. 1999) ("Although [Defendant] is a pro se inmate purporting to have filed his notice of appeal within the prison's internal mail system . . . , we do not apply the . . . pro se prisoner mailbox rule because [his] declaration of a timely filing did not, as required, 'state that first-class postage has been prepaid.'") (quoting Fed. R. App. Pro. 4(c)(1)).

Moreover, the rule that we liberally interpret filings by pro se parties is less persuasive in the context of Rule 4(c)(1) because Congress adopted the Rule 4(c)(1) knowing full well that it would apply almost exclusively to pro se parties. Nevertheless, rather than draft leniency into the Rule, Congress provided two specific methods to prove timely compliance. Because Congress chose this route, we cannot graft onto the Rule additional methods of proving timely compliance. Therefore, in hewing faithfully to the specific requirements of Rule 4(c)(1), we do nothing more than recognize that failure to comply with a jurisdictional mandate deprives this Court of jurisdiction to consider the

merits of an appeal.  *See Parker*, 77 F.3d at 1290.

### III.  Conclusion

Because Congress has delineated the methods in which a party may prove timely compliance with Fed. R. App. P. 4(c)(1), and because Mr. Ceballos-Martinez has not complied with those requirements, we DISMISS his appeal for lack of subject-matter jurisdiction.